**CITY OF DALLAS, Appellant,**

v.

**Stephen M. MOREAU, Appellee.**

**No. 13–85–364–CV.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Nov. 13, 1986.

Carroll R. Graham, City Attorney's Office, Dallas, for appellant.

Tony Wright, Tony Wright & Associates, Dallas, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is a tort action. Appellee Stephen M. Moreau originally sued appellant, the City of Dallas, and two city employees in libel, alleging that appellant's employees maliciously published a letter discharging him from city employment. From a judgment based on favorable jury findings, the City of Dallas appeals. We reverse.

A review of the facts is important. Appellee testified to the following facts. He

was employed by the City of Dallas in the City Marshall's Office, Bailiff Division, at the time of the events in question. He was a certified peace officer. As a bailiff, he was responsible for the orderly proceedings in the city courts. On the night of April 22, 1979, as appellee drove up to his apartment in a high-crime area, he observed an automobile idling in front of a driveway, facing the wrong way. Its lights were out and someone was sitting in the driver's seat. Based on his law enforcement training, appellee's suspicions were aroused. He entered his apartment, told his girlfriend to call the police, picked up his pistol and badge case, and went outside. He continued to observe the vehicle. Ultimately he decided to approach it. As he reached the vehicle, he noticed a person emerging from an alley with a flashlight and a burglary tool.

Appellee attempted to arrest the two occupants of the car and the third person who came from the alley, but the third person began to argue with him. A struggle ensued. Meanwhile, the driver of the car re-entered it and drove the car, aiming it at the appellee, who had to jump out of the way to avoid being run over. The third person began fleeing in the opposite direction from the car. Appellee fired one shot at the person fleeing on foot, then he turned and fired three shots at the car.

Appellee made a written report of the incident to his supervisor on April 30, 1979. He was later notified that the incident was under investigation, and on May 14, 1979, he was given a letter terminating his employment. The letter accused him of firing his weapon without legal justification. Provisions of Chapter 9 of the Texas Penal Code, governing the use of deadly force, were copied into the letter. Copies of the letter were circulated to certain members of the city staff, and one copy was posted on the employee bulletin board in the warrant office. The publication of the letter is the basis of his libel action.

Appellee testified that, in his opinion, Mr. Winston Evans, the author of the letter, was attempting to phase him out of the warrant office, and that various members of the City of Dallas staff, his supervisors, had decided to get rid of him. Because of these incidents, he stated that he was shamed and embarrassed; he was "razzed" by his co-workers; his credit rating was damaged; he lost sleep; his weight fluctuated; and his reputation as a law enforcement officer was damaged. He appealed the discharge to the trial board. Some of the peace officers, many of whom worked with appellee, testified that, in their opinions, he acted correctly in firing his weapon. The trial board reinstated the appellee within a few months and awarded him full pay and reinstatement of benefits. The appellee, still dissatisfied, filed this libel action against the city. During the trial, the peace officers who saw the letter on the bulletin board also testified that they were surprised by it.

The city's first seven points of error assert that it should have prevailed on its defense of governmental immunity. Appellant raised this defense before the trial court by a pretrial "Motion for Judgment on the Pleadings," by motion for directed verdict after appellee Moreau rested, by objection to special issues submitting appellee's case to the jury, and by post-verdict motion for judgment notwithstanding the verdict.

Appellant's motion for judgment notwithstanding the verdict should have been granted. Judgment n.o.v. is proper if the evidence is so conclusive that the movant is entitled to judgment as a matter of law. *Dittberner v. Bell*, 558 S.W.2d 527, 531–32 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Where there is no dispute over the basic facts necessary for appellant to prevail, judgment n.o.v. should be granted. *See Gibraltar Savings Association v. Watson*, 683 S.W.2d 748, 751 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Hill v. Sabine Pipe & Supply Co.*, 272 S.W.2d 769, 771–72 (Tex.Civ.App.—Texarkana 1954, writ ref'd n.r.e.). *Cf. Graphilter Corp. v. Vinson*, 518 S.W.2d 952 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (Plaintiff's evidence in suit for breach of contract

showed contract illegal, thus entitling defendant to judgment n.o.v.).

■ Appellant, the City of Dallas, is a municipal corporation. Except as waived by the Texas Tort Claims Act,[1] a city performing a governmental function is immune from suit on the torts of its officers, agents, and employees.[2] *Cronen v. Nix,* 611 S.W.2d 651, 653 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), *cert. denied,* 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 112 (1981); *Westbrook v. City of Edna,* 552 S.W.2d 608, 611 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Jackson v. City of Corpus Christi,* 484 S.W.2d 806, 808 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). Activities performed as part of the police power of a municipal corporation in providing for the health, safety, and general welfare of the citizens fall clearly within the governmental functions of a city. *Ellis v. City of West University Place,* 141 Tex. 608, 175 S.W.2d 396, 397 (1943); *City of Dallas v. Smith,* 130 Tex. 225, 107 S.W.2d 872, 873–75 (1937).

■ Appellee Moreau is a certified peace officer who, at the time of the actions made the basis of this suit, was an employee of the City Marshall's Office. That office, from what we are able to ascertain by the record, is responsible for serving warrants and arresting persons for all Class C misdemeanors, including assault, traffic violations, and failure to appear. It also provides bailiffs for the municipal courts, who are responsible for preserving order in the courtroom. Appellee wore a firearm at all times. Apparently most, if not all, of his fellow employees also carried a weapon in their duties. In performing these activities, the City Marshall's Office clearly performs a governmental function, akin to a police department. Unquestionably, the operation of a police department is a governmental func-

tion. *Cronen v. Nix,* 611 S.W.2d at 653. The hiring and firing of city employees is also a governmental function. *See Kelly v. Galveston County,* 520 S.W.2d 507, 512 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *State ex rel. Gallagher v. Kansas City,* 319 Mo. 705, 7 S.W.2d 357, 361 (1928). Other states have specifically held, and we find, that a city is immune from suit for libel, just as for any tort, where the alleged libel occurred in the performance of a governmental function. *Stanley v. Inhabitants of Sangerville,* 119 Me. 26, 109 A. 189, 190 (1920); *Howland v. Inhabitants of Maynard,* 159 Mass. 434, 34 N.E. 515, 516 (1893).

■ Even after considering all of the above facts, we find that the appellant city was immune from the libel cause of action by appellee for publishing the letter of discharge as a matter of law. Special issues one through ten, in which the jury found that appellant libeled appellee and published private facts about him which were defamatory, and assessed damages, were immaterial. The duty of the jury is to find the facts; the court must then pronounce the law on the facts found. *Young v. Kilroy Oil Company of Texas, Inc.,* 673 S.W.2d 236, 247 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The trial court can and should disregard answers to special issues which are immaterial. *Id. see also Goree v. Carnes,* 625 S.W.2d 380, 386 (Tex.App.—San Antonio 1981, no writ). In light of the applicability of the doctrine of governmental immunity, the jury's answers to special issues one through ten were immaterial, and should have been disregarded, as requested in the city's motion for judgment non obstante veredicto. Judgment n.o.v. should have been granted on appellee's suit for libel.

■ This reasoning also applies to the cause of action (if such exists) for appellant's employees' acting without proper mo-

---

**1.** Texas Tort Claims Act, ch. 292, 1969 Tex.Gen. Laws 874, 874–879, *repealed by* Act of June 16, 1985, ch. 959, § 9(1), 1985, Tex.Sess.Law.Serv. 7043, 7219 (now codified as TEX.CIV.PRAC. & REMS CODE ANN. ch. 101 (Vernon 1986).

**2.** For a definition of governmental function, see *Gates v. City of Dallas,* 704 S.W.2d 737, 738 (Tex.1986).

tive and without due care and diligence in the performance of their official duties in regard to the act of posting the termination letter on the bulletin board. The jury's answers to special issues thirteen through seventeen should have been disregarded, and judgment n.o.v. should have been entered for appellant.

■ Appellee contends that appellant waived its defense of governmental immunity, citing *City of Houston v. Bush*, 566 S.W.2d 33, 35 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). While the *Bush* case holds that governmental immunity is a defensive doctrine, and that the City of Houston waived the defense by failing to request issues on it, the *Bush* case does not control this one. *Bush* was a wrongful death action. The deceased was employed laying sewer pipe on a city project. The Beaumont Court of Appeals had already correctly concluded that the activity was partly proprietary and partly governmental in nature. Such activities are not entitled to governmental immunity as a matter of law. *Id.; Pontarelli Trust v. City of McAllen*, 465 S.W.2d 804, 808 (Tex.Civ. App.—Corpus Christi 1971, no writ). In this case, however, it is clear that the personnel action taken toward appellee, a peace officer for the City Marshall's Office, was a governmental function. The material facts were not in dispute. Appellee was afforded the city's administrative procedure to right the wrong. He pursued this remedy and received complete relief.

We agree that appellant could have raised governmental immunity by special exception and by motion for summary judgment well before trial. Failing that, the city could have reurged its motion for directed verdict at the close of all the evidence; and, had that been overruled, it could have submitted issues to the jury. We are not sure of the city's trial tactics. Appellant may have wanted to listen to all the evidence the appellee had, to see if any argument could be made that the appellant was engaged in any way in a proprietary function. However, after all the evidence was in, the trial court should have entered

judgment n.o.v. because there was no evidence produced during the course of the trial that would make the City's actions anything but a governmental function. Appellee put on no proof that would even suggest that the city was acting in a proprietary capacity, though he was well aware that appellant was claiming governmental immunity.

■ In any event, we also find that the city was not liable because the writing is not libelous. The letter terminating appellee was written by his supervisor, Winston Evans. After stating that appellee was discharged as of May 14, 1979, it states that the specific reason for discharge was appellee's firing his weapon at a fleeing suspect and vehicle on April 22, 1979. The letter then states that appellee had violated a city personnel rule, which was set out. The letter states that appellee had previously been suspended for shooting at a fleeing suspect. After referring to appellee's account of the shooting on April 22, 1979, the letter concludes that appellee's account provided no justification for firing his weapon under Chapter 9 of the Penal Code. The letter then quotes sections 9.32, 9.42, and 9.51 of the Penal Code. The letter continues:

> Under these circumstances, I (Winston Evans, the supervisor) have concluded that your conduct in the use of deadly force on April 22, 1979, was without legal justification under the Texas Penal Code and represents misconduct under City Personnel Code of Conduct Rules. This misconduct combined with a previous suspension on August 22, 1974, for the same reason reflects adversely upon the City and on the confidence of the public in the integrity of the City peace officers.

A statement of opinion is not actionable. *Gertz v. Welch*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974); *Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin*, 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974); *Greenbelt Publishing Association v. Bresler*, 398 U.S. 6, 14, 90

S.Ct. 1537, 1541, 26 L.Ed.2d 6 (1970); *Ollman v. Evans,* 750 F.2d 970, 975 (D.C.Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985); *El Paso Times, Inc. v. Kerr,* 706 S.W.2d 797, 798 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *A.H. Belo Corp. v. Rayzor,* 644 S.W.2d 71, 80 (Tex.App.—Fort Worth, writ ref'd n.r.e.). Whether a statement is one of opinion or fact is a question of law. *Ollman v. Evans,* 750 F.2d at 978; *El Paso Times, Inc. v. Kerr,* 706 S.W.2d at 800. Interpretation of the Penal Code provisions and the personnel conduct rule set out in the termination letter is inherently subjective, and the readers of that letter are put on notice that Evans' conclusions are opinions. *See Ollman,* 750 F.2d at 988. Moreover, anyone who reads the letter is given the text of the statutes and the personnel rule that form the basis for Evans' opinions, and is able to judge the conclusions for himself. We find that the appellee had no cause of action for libel based on that letter.

Appellant contends, in points of error eight through twelve, that the trial court erred in allowing a cause of action for wrongful discharge to be added by trial amendment at the close of all the evidence. Appellee had put on evidence that his discharge was without justification throughout the trial, over appellant's repeated objections. Appellant argued that this was an improper attempt to appeal the order of the city trial board, which had ordered appellee reinstated, with all back pay and benefits. The allowance of trial amendments is addressed to the sound discretion of the court, and is reviewable only on a showing of abuse of discretion. *Yowell v. Piper Aircraft Corp.,* 703 S.W.2d 630, 634 (Tex.1986); *Wendell v. Central Power and Light Co.,* 677 S.W.2d 610, 617 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

After the jury awarded appellee one dollar on each of the ten damage issues relating to wrongful termination, and after judgment was entered on the verdict, appellant moved for judgment n.o.v., and moved the court to take judicial notice of the Dallas city charter provision which controls city employees' right to appeal a ter-mination. Appellant contends the trial court erred in failing to grant judgment n.o.v. on the wrongful termination action based on the charter provision.

TEX.R.EVID. 201(f) states, "Judicial notice may be taken at any stage of the proceeding." No published cases in Texas appear to have construed this language. However, Rule 201 is identical for all purposes to FED.R.EVID. 201. Time for taking judicial notice has been authoritatively analyzed in 21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5110 (1977). That treatise states that judicial notice is proper at post-trial proceedings such as a hearing on motion for judgment n.o.v. It also observes that the provision of Rule 201(f) that the court "may" take notice at any time is limited by Rule 201(d), which states, "A court shall take judicial notice if requested by a party and supplied with the necessary information." The appellant provided the trial court with a written motion and a certified copy of the relevant portion of the Dallas city charter. The matter was fully argued on the record at the hearing on the motion for judgment n.o.v.

This view is correct. However, in any event, a court of appeals may take judicial notice for the first time on appeal. *Gustafson v. Cornelius Co.,* 724 F.2d 75, 79 (8th Cir.1983). We take notice of Chapter XVI, § 12, of the Dallas city charter and hold that the trial court erred in entering judgment on the wrongful termination cause of action. The charter provision states that an appeal of the city trial board "shall be decided based upon the review of the record of the board hearing." The record was not introduced in evidence. Furthermore, unless a district court's review of an administrative order is by trial de novo, the review is to be conducted by the trial court sitting without a jury. *Southwestern Bell Telephone Co. v. Public Utility Commission,* 571 S.W.2d 503, 510 (Tex.1978). The issue of wrongful termination was not properly before the court. Any delay in presenting the city charter

provision to the court for judicial notice was caused by the appellee, who only asserted the cause of action just before the case went to the jury. The trial court should have granted appellant's motion for judgment n.o.v. as to the wrongful discharge.

It is not necessary for us to discuss the remainder of appellant's thirty-two points of error. TEX.R.CIV.P. 451. For the same reason, appellee's first cross-point, relating to the award of attorney's fees, is overruled.

■ Appellee, by cross-points two through four, complains that the trial court erred in granting pre-trial summary judgments to two individual employees of the city. The right of an appellee to present cross-points, where he has perfected no separate appeal, is limited to matters affecting the interest of the appellant. Appellee may not use cross-points to complain of a portion of the judgment favoring persons not made party to the appeal. *Vector Corp. v. First State Bank & Trust Co.,* 430 S.W.2d 536, 539 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). Even if an appellee is entitled to bring a cross-point, he must allow the trial court an opportunity to correct any errors by filing exceptions to the judgment, notice of appeal, or motion for new trial. *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 336 S.W.2d 609, 610–11 (1960); *Dalton v. Don J. Jackson, Inc.,* 691 S.W.2d 765, 768 (Tex.App.—Austin 1985, no writ).

The judgment of the trial court is reversed, and judgment is here rendered that appellee Stephen M. Moreau take nothing.